IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS ODINMA, et al., | No. C-09-4674 EDL |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| AURORA LOAN SERVICES, | |
| Defendant. | |

On July 1, 2009, Plaintiffs Francis and Carol Odimna filed a complaint in the Alameda County Superior Court against Defendant Aurora Loan Services, alleging claims for breach of a forbearance agreement, wrongful foreclosure, quiet title and violation of the Fair Debt Collection Practices Act. Defendant removed this matter on October 1, 2009 based on diversity jurisdiction. On January 11, 2010, Plaintiff filed a first amended complaint. The first amended complaint contains claims for breach of a forbearance agreement, violation of the Perata Mortgage Relief Act (Cal. Civil Code § 2923.5), quiet title, intentional infliction of emotional distress, violation of California Business and Professions Code § 17200, aiding and abetting, and declaratory relief. Defendant filed a motion to dismiss the first amended complaint. Plaintiff opposed the motion, and Defendant filed a reply. On March 9, 2010, the Court held a hearing on Defendant's motion. For the reasons stated at the hearing and in this Order, Defendant's motion is granted with leave to amend as stated below.

**Facts**

Plaintiffs have lived at 1484 Christina Court in Hayward for about seven years with their seven children. First Amended Compl. ("FAC") ¶¶ 1, 5. In approximately January 2008, Plaintiffs defaulted on their loan. Id. ¶ 5. They fell into arrears of approximately $12,000. Id. On May 13,

2008, Defendant recorded a Notice of Default and Election of Sale against Plaintiffs' property. Request for Judicial Notice ("RJN") Ex. 2.[1]

In June 2008, Plaintiffs received an unsigned forbearance agreement and workout agreement from Defendant, which they signed and returned, but which was never acknowledged by Defendant. FAC ¶¶ 7, 16. On August 13, 2008, another almost identical forbearance agreement was sent to Plaintiffs, which they signed and returned to Defendant. Id. ¶¶ 7, 16; RJN Ex. 3. Plaintiffs made three payments totaling $7,251.00 under that agreement. FAC ¶ 8.

On August 15, 2008, a Notice of Trustee's Sale relating to Plaintiffs' property was recorded. RJN Ex. 5. On October 7, 2008, Defendant wrote Plaintiffs a letter congratulating them on complying with the forbearance agreement. FAC ¶ 8; RJN Ex. 7. The October 7 letter also sought additional information about Plaintiffs' financial situation. FAC ¶ 9; RJN Ex. 7. Plaintiffs provided that information. FAC ¶ 9. After October 7, 2008, Defendant did not send any further written communication, or made an oral or written demand for payment. FAC ¶ 10.

Plaintiffs communicated with Defendant several times by telephone between October 2008 through February 2009, but there was no mention of an imminent eviction or other drastic remedy. FAC ¶ 11. Plaintiffs and several of their children were in Nigeria during the relevant time period, but Plaintiffs left their eldest son and a lodger at the property. Declaration of Francis Odinma at 3.

On March 9, 2009, a Trustee's Deed Upon Sale was recorded stating that the foreclosure sale had taken place on February 27, 2009. RJN Ex. 6. Plaintiffs allege that they were never served with

---

[1] Defendant has filed a Request for Judicial Notice and attached various exhibits that they request the Court consider in deciding the Motion to Dismiss. On a motion to dismiss, a court normally may not look to matters beyond the complaint without converting the motion into one for summary judgment. See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991). There are two exceptions to this rule: (1) a court may take judicial notice of material which is either submitted as part of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Here, Defendant requests judicial notice of documents publicly filed with the County of Alameda, and documents that are referenced in the first amended complaint. The documents are a matter of public record, and/or are incorporated by reference in the first amended complaint, and Plaintiffs do not question the authenticity of Defendant's submission. To the extent that the Court relies on documents contained in Defendant's Request for Judicial Notice, those documents are appropriate for judicial notice. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (stating that the incorporation by reference doctrine permits the court to consider documents central to the allegations in the complaint and whose authenticity no party questions, but which are not attached to the complaint).

1  the Notice of Trustee's Sale.  FAC ¶ 13.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 129 S. Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 1950.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief."  Id.  Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ."  Id. at 1949 (internal quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

**Discussion**

**1.   Plaintiffs are not entitled to rescission because they failed to allege tender**

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971); see also Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."); 4 Miller & Starr, Cal. Real Estate § 10.212 (3d ed. 2009) ("A challenge to the validity of the trustee's sale is an attempt to have the sale set aside and to have the title restored.

3

The action is in equity, and a trustor seeking to set the sale aside is required to do equity before the court will exercise its equitable powers. Therefore, as a condition precedent to an action by the trustor to set aside the trustee's sale on grounds that the sale is voidable, the trustor must pay, or offer to pay, the secured debt, or at least all of the delinquencies and costs due for redemption, before an action is commenced or in the complaint. Without an allegation of such a tender in the complaint that attacks the validity of the sale, the complaint does not state a cause of action."). California district courts apply the tender rule in examining wrongful foreclosure claims. Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999); see also Benham v. Aurora Loan Servs., C-09-2059 SC (N.D. Cal. Oct. 1, 2009) (granting a motion to dismiss a wrongful foreclosure claim because the plaintiff failed to allege a credible tender offer).

Here, Plaintiffs have not alleged that they have tendered or are able to tender the amount of the secured debt. Plaintiffs' argument that the payment of $7,251 plus their willingness to work out a payment plan for the rest of the debt constitutes a tender offer is not supported by the caselaw. Further, Plaintiffs did not make the final payment that was required under the forbearance agreement. Therefore, Plaintiffs are not entitled to rescission, and Defendant's Motion to Dismiss is granted as to Plaintiffs' claims seeking rescission.

Plaintiffs argue that the Court has discretion to decline to impose the tender rule when to do

4

so would be inequitable. They argue that in this case, application of the tender rule would be inequitable because they have paid more than $7,000 under the workout agreement, they received a congratulatory letter from Defendant and Defendant asked for further information from them about their financial condition in connection with Defendant's offer to agree on a permanent workout agreement. However, the cases cited by Plaintiffs do not support their equity argument. Rather, in those cases, courts have found that once a credible tender offer is alleged (which has not occurred in this case), a court has equitable discretion to determine how and when the amount must be paid. See, e.g., Avila v. Stearnes, 2008 U.S. Dist. LEXIS 31813 (C.D. Cal. Apr. 7, 2008) (finding that the TILA violations were serious and so the court was not inclined to exercise its discretion to condition rescission on a showing of the ability to tender the entire lump sum to obtain a preliminary injunction).

Further, other cases cited by Plaintiffs are inapposite. For example, in Humboldt v. McCleverty, 161 Cal. 285, 290-91 (1911), the court stated that: "Whatever may be the correct rule [about the tender rule], viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale." See Humboldt, 161 Cal. at 291; see also 4 Miller & Starr, Cal. Real Estate, § 10.212 (3d ed. 2009) ("Also, a tender may not be required where it would be inequitable to impose this condition."). However, there, unlike here, the question was whether a widowed defendant was liable for the entire mortgage debt on two properties. The defendant only had an interest in one property that was part of the default sale and worth only $5,000, while the plaintiff argued that the defendant should have to tender the entire amount of the sale for both properties, which was approximately $57,000. The Court stated that it would be inequitable to permit the sale of both properties when the sale of one would have satisfied the debt, and noted the inequity in the claim that "in order to be enabled to attach an unauthorized sale of her five-thousand-dollar homestead, she must pay or offer to pay, a debt of $57,000, for which she is in no way liable."

In Yamamoto v. Bank of New York, 329 F.3d 1167, 1172-73 (9th Cir. 2003), the question was whether a court may order borrowers who seek rescission under the Truth in Lending Act ("TILA") to show that proceeds can be tendered if they prevail, and the court held that it has

5

discretion to modify the sequence of rescission events in those circumstances. See Yamamoto, 329 F.3d at 1170, 1173 ("Thus, a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations."). Here, this case does not implicate the TILA rescission procedures.

In Bank of Seoul & Trust Co. v. Marcione, 198 Cal.App.3d 113, 119 (1988), the court determined that the plaintiffs' complaint survived a demurrer where there were allegations that the auction of the property was not conducted fairly because the individual bidders were not instructed on how to make a proper bid. Plaintiffs argue that their case is similar to Bank of Seoul because there are allegations that the trustee's sale was made without notice to Plaintiffs, while Defendant was allegedly working with Plaintiffs to reach a workout agreement of the debt. Plaintiffs have cited no case applying Bank of Seoul to the circumstances of their case.

**2. Defendant's motion to dismiss Plaintiff's first claim for breach of the forbearance agreement is granted**

Plaintiffs allege that the forbearance agreement was meant to avoid foreclosure, and that they interpreted the agreement as a good faith attempt to make arrangements to keep their investment. However, a reading of the forbearance agreement reveals that the lender retained the ability to foreclose if the agreement was not satisfied. See RJN Ex. 3 at 3, ¶ 3. The agreement obligated Plaintiffs to make three monthly payments of $2,417.00 and then a last installment of $28,909.25 in the fourth month. See id. at 7, ¶ a.1. There are no allegations that Plaintiff made the last balloon payment, and the congratulatory letter from Defendant was sent before that payment was due in November 2008. Further, the congratulatory letter only provided Plaintiffs the opportunity to enter into a more permanent payment arrangement provided they submitted additional financial information; Defendant did not promise that it would actually enter into a new payment agreement. Because the forbearance agreement did not contain a promise not to foreclose, Plaintiffs have failed to pled a claim for breach of that agreement.

Defendants note that the original Promissory Note need not be produced as a prerequisite to conducting a non-judicial foreclosure sale. Quality Loan Service Company, as the undisputed trustee under the deed of trust, had the right to initiate non-judicial foreclosure proceedings. "California law does not require possession of the note as a precondition to non-judicial foreclosure

6

under a deed of trust . . . Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Production of the original note is not required to proceed with a nonjudicial foreclosure." Pagtalunan v. Reunion Mortgage Inc., 2008 WL 961995, at *1 (N.D. Cal. 2008). The trustee has the power and the duty to initiate foreclosure proceedings on the property upon the trustor's default, resulting in a sale of the property. Lomboy v. SCME Mortg. Bankers, 2009 WL 1457738, at *5 (N.D. Cal. 2009). In this case, Quality had the power to foreclose, as permitted under California law. See RJN Ex. 4; Kachlon v. Markowitz, 168 Cal. App. 4th 316, 364 (2008).

Further, a nonjudicial foreclosure sale is accompanied by a common law presumption that it "was conducted regularly and fairly." Melendrez v. D & I Inv., 127 Cal.App.4th 1238, 1258 (2005) (quoting Brown v. Busch, 152 Cal.App.2d 200, 204 (1957)). This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. Id. (citing 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal.App.4th 1279, 1284 (2001)). The "mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" Id. It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity. Id. (citing Hatch v. Collins, 225 Cal.App.3d 1104, 1113 (1990)). If a trustee's deed contains a recital that all default and sale notices have been given, the notice requirements are statutorily presumed to have been satisfied, which presumption is conclusive as to a bona fide purchaser. See Cal. Civ. Code § 2924 (c) ("A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.").

Plaintiffs argue that Defendant is not a bona fide purchaser of the loan because Defendant was the holder of the note and the party that allegedly induced Plaintiffs to enter into the loan in the first place. Plaintiffs argue that a bona fide purchaser must be a stranger to the transaction, and

Defendant was not. The cases cited by Plaintiffs, however, do not address the requirements for a bona fide purchaser. See Cheney v. Trauzettel, 9 Cal. 2d 158 (1937); Mehr v. Superior Court, 139 Cal.App.3d 1044 (1983); Asuncion v. Superior Court, 108 Cal.App.3d 141 (1980). In addition, Plaintiffs have not alleged that Defendant was not a bona fide purchaser. Further, the documents reflect that Mortgageit was the original lender, Alliance Title was the original trustee and Mortgage Electronic Registration Systems was the original beneficiary (RJN Ex. 1), that there was a substitution of trustee substituting Quality Loan Service (RJN Ex. 4), and then that Quality conducted the foreclosure sale to Aurora (RJN Ex. 6). The workout agreement was an arrangement with Aurora. Even if Defendant is not a bona fide purchaser, Plaintiffs have alleged no prejudicial procedural irregularities that would constitute substantial evidence to rebut the presumption of validity of the trustee's sale. Defendant's motion to dismiss the first claim is granted with leave to amend.

**3. Defendant's motion to dismiss Plaintiff's second claim for violation of Civil Code Section 2923.5 is granted**

Plaintiffs allege that Defendant failed to observe the meet and confer requirement mandated by California Civil Code Section 2923.5, which requires lenders to contact delinquent borrowers to attempt to work out a payment plan before initiating foreclosure proceedings. Plaintiffs allege that Defendant did not provide notice or conduct an actual dialogue with Plaintiffs to explore alternatives to foreclosure before beginning the nonjudicial foreclosure proceedings. FAC ¶ 20. Plaintiffs argue that, instead, Defendant acted fraudulently and deceitfully with respect to the forbearance agreement. Id.

Defendants argue that this claim fails because: (1) the statute does not apply; (2) there is no private right of action under Section 2923.5; and (3) Section 2923.5 is preempted. First, Defendant argues that Section 2923.5 was enacted on September 6, 2008 and the Notice of Default was recorded on May 13, 2008, so Section 2923.5 did not apply to this case. However, the statute also states:

> (c) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either:

8

> (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure.
> (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made.

Cal. Civ. Code § 2923.5(c). Therefore, the fact that a notice of default was filed prior to September 6, 2008 does not render Section 2923.5 inapplicable. Moreover, Plaintiffs have alleged that Defendant did not comply with Section 2923.5(c). Plaintiffs allege that after Defendant sent the congratulatory letter on October 7, 2008, Plaintiffs communicated with Defendant, but that Defendant did not mention any "drastic remedy." FAC ¶¶ 10-11. Without further demand for payment and without serving Plaintiffs with a notice of sale, Defendant proceeded with the foreclosure process and sale. FAC ¶ 10. Plaintiffs allege that Defendant failed to explore alternatives to foreclsoure before the commencement of a nonjudicial foreclosure. FAC ¶ 20.

Second, Defendant argues that there is no private right of action under this section. As Defendant acknowledged at the hearing, courts are split on whether Section 2923.5 contains a private right of action. Compare Gaitan v. Mortgage Electronic Registration Systems, 2009 WL 3244729 (C.D. Cal. Oct. 5. 2009) (finding no private right of action); Yulaeva v. Greenpoint Mortgage Funding, Inc., 2009 WL 2880393, at *11 (E.D. Cal. Sept. 03, 2009) (assuming without deciding that Section 2923.5 does not provide a private right of action); Anaya v. Advisor Lending Group, 2009 WL 2424037, at *7-8 (E.D. Cal. Aug. 5, 2009), with Ortiz v. Accredited Home Lenders, Inc., 639 F.Supp.2d 1159, 1166 (S.D. Cal. 2009) (finding section 2923.5 does contain a private right of action, as "the California legislature would not have enacted this 'urgency' legislation, intended to curb high foreclosure rates in the state, without any accompanying enforcement mechanism."). Accordingly, the Court cannot find as a matter of law that Plaintiffs' claim fails on this basis.

Third, Defendant argues that the allegation that Defendant failed to comply with the notice provision of Section 2923.5 is preempted by the Home Owner's Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., and the regulations promulgated thereunder by the Office of Thrift Supervision ("OTS"), 12 C.F.R. § 560.2(b)(1)-(13), because Defendant is a direct subsidiary of Aurora Bank FSB, a federal savings association. See State Farm Bank v. Reardon, 539 F.3d 336, 345 (6th Cir. 2008) ("Properly understood, Watters stands for the proposition that when considering whether a

9

state law is preempted by federal banking law, the courts should focus on whether the state law is regulating "the exercise of a national bank's power," not on whether the entity exercising that power is the bank itself.").

Pursuant to the Supremacy Clause, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Bank of America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). In the field of banking, Congress has created "an extensive federal statutory and regulatory scheme." Id. As part of this extensive federal scheme, Congress enacted HOLA during the Great Depression. Silvas v. E*Trade Mortgage Co., 514 F.3d 1001, 1004 (9th Cir. 2008). The purpose of HOLA was to charter savings associations under federal law as a means of restoring public confidence through a nationwide system of savings and loan associations that are centrally regulated according to nationwide "best practices." Id. (citing Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-61, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)).

Through HOLA, Congress gave the OTS broad authority to issue regulations governing federal savings associations. See 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005. Under 12 C.F.R. § 560.2(b), the OTS has listed numerous types of state laws that are preempted, including:

> state laws purporting to impose requirements regarding ... [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants.

A state law of general applicability can be preempted by HOLA if, as applied, it falls under § 560.2(b). See Silvas, 514 F.3d at 1006; Munoz v. Fin. Freedom Senior Funding Corp., 567 F.Supp.2d 1156, 1160 (C.D.Cal.2008). However, under 12 C.F.R. § 560.2(c), "state laws of general applicability only incidentally affecting federal savings associations are not preempted." Silvas, 514 F.3d at 1006.

To determine whether a state law is preempted by HOLA:

> . . . the first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these

10

purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sep. 30, 1996)). HOLA preempts state law that deals with the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). Under California law, a declaration shall be included in a notice of default stating that "the mortgagee, beneficiary, or authorized agent ... has contacted the borrower ... or tried with due diligence to contact the borrower." Cal. Civ.Code § 2923.5(2)(b). The purpose of the notice of default is to advise the trustor of the amount required to cure the default and avoid foreclosure. Knapp v. Doherty, 123 Cal.App.4th 76, 99, 20 Cal.Rptr.3d 1 (2004).

Here, Plaintiffs allege that Defendants failed to communicate with Plaintiffs before beginning the foreclosure process. FAC ¶¶ 10-11, 20. Defendants claim that the notice requirement imposes a state law mandate about what information must be given to borrowers, and includes a strict time frame for doing so. Defendant would not be subject to these requirements in other states. Therefore, Plaintiffs' Section 2923.5 claim concerns the processing and servicing of Plaintiffs' mortgage and is preempted by HOLA. See Murillo v. Aurora Loan Servs., 2009 WL 2160580 (N.D. Cal. July 17, 2009).

Plaintiffs' arguments against preemption are not persuasive. Plaintiffs argue that Section 2923.5 is a recent statute, but cites no authority to support an argument that a recent statute cannot be preempted. Further, Plaintiffs argue that if Section 2923.5 is preempted, the other statutes in that section must be preempted, including Section 2924, regarding the framework of nonjudicial foreclosures, which Defendant relies on. However, the question of the preemption of statutes other than Section 2923.5 is not before the Court. Finally, Plaintiffs argue that the preemption argument should not be addressed at the motion to dismiss stage, but they cite no supporting authority (and Murillo is to the contrary). Accordingly, because Section 2923.5 is preempted, Defendant's motion to dismiss Plaintiff's second claim is granted without leave to amend.

**4.     Defendant's motion to dismiss Plaintiff's third claim to quiet title is granted.**

Plaintiffs allege that they are the owners of the property, and that Defendant is improperly claiming an interest in the property adverse to Plaintiffs. FAC ¶¶ 23-24. Plaintiffs seek a

11

declaration that title to the property is vested in Plaintiffs, subject only to the encumbrance that existed before the trustee's sale. FAC ¶ 25. Defendants argue that the quiet title claim fails because Plaintiffs have not set forth the "date as of which the determination [to quiet title] is sought," or "a statement of reasons why a determination as of that date is sought." Cal. Code Civ. P. § 761.020(d). However, Plaintiffs can not state a claim to quiet title unless they allege an ability to tender the amount of the debt, which, as described above, they have not done. See Aguilar v. Bocci, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid. He is entitled to remain in possession, but cannot clear his title without satisfying his debt.") (citation omitted); see also Kelley v. Mortgage Elec. Reg. Sys., Inc., 642 F.Supp.2d 1048, 1057 (N. D. Cal. 2009) (stating that a basic requirement of an action to quiet title is an allegation that plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust."); Watson v. MTC Financial, Inc., 2009 WL 2151782, at *4 (E.D. Cal. Jul. 17, 2009) (quoting Shimpones v. Stickney, 219 Cal. 637, 649 (1934)) ("[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured."). Therefore, Defendant's motion to dismiss the quiet title claim is granted with leave to amend.

**5.     Defendant's motion to dismiss Plaintiff's fourth claim for intentional or negligent inflictcion of emotional distress is granted**

The elements of the tort of intentional infliction of emotional distress are: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Trerice v. Blue Cross of Cal., 209 Cal.App.3d 878, 883 (1989); Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). Outrageous conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized society." Id. Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a showing of intentional infliction of emotional distress. See Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991). Here, Plaintiffs have not alleged any outrageous conduct by Defendant. See Sierra-Bay Fed. Land Bank Ass'n v. Superior Court, 227 Cal.App.3d 318, 334 (1991) ("It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid.").

To state a claim for negligent infliction of emotional distress, Plaintiffs must allege the elements for negligence: (1) that Defendant owned a legal duty to Plaintiffs,; (2) that Defendant breached that duty; (3) injury to Plaintiffs as a result of the breach; and (4) damage to Plaintiffs. See 4 Witkin, California Procedure, Pleadings, § 537 (4th ed.) at 624. Plaintiffs have failed to allege any duty, and in fact, it is doubtful whether Defendant had a duty to Plaintiffs. See, e.g., Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991) ("However, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.").

Accordingly, Defendant's motion to dismiss Plaintiff's fourth claim is granted with leave to amend.

**6.   Defendant's motion to dismiss Plaintiff's fifth claim for violation of California Business & Professions Code Section 17200 is granted**

Plaintiffs seek injunctive relief based on allegations that Defendant's conduct was deceitful and in bad faith in violation of Section 17200. FAC ¶ 33. Plaintiffs argue that Defendant's conduct in the modification of the loan violates Section 17200. Specifically, Plaintiffs point to the promise or implication of a promise, that Plaintiffs could qualify for a loan modification, or at least would have received some notice before the foreclosure sale occurred. These allegations, however, are not pled with sufficient particularity in the complaint. See Lomboy v. SCME Mortgage Brokers, 2009 WL 1457738, at *7 (N.D. Cal. May 26, 2009) (stating that Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice. This cause of action is derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation."). Accordingly, Defendant's motion to dismiss Plaintiff's fifth claim is granted with leave to amend.

**7.   Defendant's motion to dismiss Plaintiff's sixth claim for aiding and abetting is granted**

Plaintiffs allege that Defendant is liable for aiding and abetting by confusing and obfuscating the terms of the transaction to Plaintiffs in a scheme to defraud. FAC ¶ 40. Aiding and abetting, however, is not a claim, but a theory of liability. In re Ryan, 2008 WL 4829947, at *3 (N.D. Cal. Oct. 28, 2008). "Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives

13

substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." Casey v. U.S. Bank National Ass'n, 127 Cal.App.4th 1138, 1144 (2005) (internal citations omitted). Plaintiffs have not stated a claim for aiding and abetting the commission of an intentional tort; in particular, there is no indication as to whom Defendant is accused of aiding and abetting. Accordingly, Defendant's motion to dismiss this claim is granted.

**Conclusion**

Defendant's motion to dismiss is granted. Leave to amend is permitted as stated above. If Plaintiffs wish to amend their complaint, they may do so no later than April 6, 2010.

**IT IS SO ORDERED.**

Dated: March 23, 2010

*Elijah D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge