IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS ODINMA, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>AURORA LOAN SERVICES,<br><br>        Defendant.             / | No. C-09-4674 EDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

On July 1, 2009, Plaintiffs Francis and Carol Odimna filed a complaint in the Alameda County Superior Court against Defendant Aurora Loan Services, alleging claims for breach of a forbearance agreement, wrongful foreclosure, quiet title and violation of the California Fair Debt Collection Practices Act. Defendant removed this matter on October 1, 2009 based on diversity jurisdiction.

On January 11, 2010, Plaintiff filed an amended complaint following the filing of a motion to dismiss the original complaint. The amended complaint contained claims for breach of a forbearance agreement, violation of the Peralta Mortgage Relief Act, quiet title, intentional infliction of emotional distress, violation of California Business & Professions Code § 17200, aiding and abetting, and declaratory relief. Defendant withdrew the first motion to dismiss.

On January 21, 2010, Defendant filed a motion to dismiss the first amended complaint. Following a hearing, the Court granted the motion with leave to amend. On April 5, 2010, Plaintiffs filed a second amended complaint.

On April 19, 2010, Defendant filed a motion to dismiss the second amended complaint. The matter has been fully briefed. On May 24, 2010, the Court held a hearing on Defendant's motion. For the reasons stated at the hearing and in this Order, Defendant's motion is granted without leave

to amend.

**Facts**

Plaintiffs have lived at 1484 Christina Court in Hayward for about seven years with their seven children. Second Amended Compl. ("SAC") ¶ 11. Approximately one and one half years ago, Plaintiffs fell into arrears on their loan payments on the property in the amount of approximately $12,000. Id.

On August 13, 2008, Plaintiffs allege that they were advised by Defendant Aurora Loan Services that the delinquent amounts on their loan totaled $18,843.42. SAC ¶ 13. Plaintiffs entered into an agreement to make four payments. SAC ¶ 13. Plaintiffs allege that the agreement lists the outstanding balance as $21,256.46. SAC ¶ 13. Beginning on August 1, 2008, Plaintiffs were required to make four monthly payments of $2,417.00 with a final payment due on November 1, 2008 for the outstanding balance, which Plaintiffs allege was $11,592.42. SAC ¶ 14. However, the August 2008 agreement, which is the operative signed agreement, shows that the final November 1, 2008 payment was $28,909.25. See Request for Judicial Notice ("RJN") re: Mot. to Dismiss First Am. Compl. at Ex. 3-40.

Plaintiffs allege that on August 15, 2008, Defendant issued a Notice of Sale of Plaintiffs' home set for auction on September 3, 2008. SAC ¶ 33. Plaintiffs allege that they never received the Notice of Sale. SAC ¶ 37.

Following Plaintiffs' third payment of $2,417.00 in October 2008, Plaintiffs received a letter from Defendant dated October 7, 2008 congratulating them for successfully maintaining their current home retention payment arrangement. SAC ¶ 14. The letter stated that Defendant sought to enter into a more permanent workout option. SAC ¶ 15.

On October 15, 2008, Plaintiffs allege that they called Defendant's loan counselor to get more information about the permanent workout option. SAC ¶ 15. Defendant allegedly told Plaintiffs that the offer of a more permanent workout option was being extended to them in light of their compliance with the August 13, 2008 forbearance agreement. SAC ¶ 15. Plaintiffs allege that they provided Defendant with all the financial information required for a more permanent workout option. SAC ¶ 16. Plaintiffs allege that they made several follow up calls to Defendant's loan

2

counselor who confirmed that they had received the financial information provided. SAC ¶ 16. Plaintiffs were allegedly told that all conditions precedent to a more permanent workout plan had been met and the only issue was determining how much the outstanding delinquent amount was and what the new payments would be. SAC ¶ 16.

On or before November 1, 2008, Plaintiffs allege that they contacted Defendant's loan counselor to inquire what the new payment plan would be. SAC ¶ 17. Plaintiffs allege that they offered to make the fourth payment of $11,592.42, but were advised by Defendant's loan counselor not to send any payment until Defendant made a final calculation of the new payments. SAC ¶ 17.

Despite being told not to, Plaintiffs allegedly wrote a check for the balance of $11,592.42 and contacted Defendant's customer service department to advise them that the check would be mailed. SAC ¶ 18. Defendant allegedly refused to accept payment for the balance of $11,592.42, but rather insisted that Plaintiffs either pay the balance of $21,256.46 claimed by Defendant or wait for them to resolve the discrepancy regarding the delinquent amount and then provide Plaintiffs with a payment plan or the option of paying the entire delinquent amount. SAC ¶ 19.

Plaintiffs allege that they requested a proper accounting to ascertain the exact delinquent amount. SAC ¶ 20. Defendant allegedly agreed and Plaintiffs allege that they advised Defendant's representatives that as soon as the matter was resolved, the new payment would be made. SAC ¶ 19. As a precaution, when Plaintiffs left for Nigeria for an extended stay, they left two checks with their pastor, one for $11,592.42 and a blank signed check for whatever the difference might be. SAC ¶ 19. Plaintiffs allege that they made several calls to Defendant advising them of the check for $11,592.42, but were rebuffed because the amount was less than what was claimed by Defendant as delinquent. SAC ¶ 20.

Plaintiffs allege that despite the dispute over the delinquent amount, Defendant never provided any accounting to Plaintiffs, nor did they advise Plaintiffs of the true delinquent amount. SAC ¶ 21. Plaintiffs allege that Defendant simply refused to accept Plaintiffs' election to pay the lesser outstanding delinquent amount, and instead foreclosed on Plaintiffs' home in their absence and without proper notice. SAC ¶ 21.

Prior to leaving for Nigeria, Plaintiffs allege that they advised Defendant of that trip, and

3

called Defendant's loan counselor to leave a number and email address where they could be reached in Nigeria. SAC ¶ 21. While they were in Nigeria, Plaintiffs allege that they made several calls to Defendant's loan counselor and were informed to be patient and that Defendant was working on their loan. SAC ¶ 26.

Plaintiffs allege that while they were in Nigeria, they learned from their young son that Defendant had foreclosed on their home without giving any notice to cure or accepting the offered payment of $11,592.42 or a more permanent workout solution despite Plaintiffs' acceptance of Defendant's offer to do so in the October 7, 2008 letter. SAC ¶ 29. Upon returning from Nigeria, Plaintiffs allege that they contacted Defendant to inquire why their home was foreclosed despite their offer to pay the delinquent amount. SAC ¶ 30. Plaintiffs allege that since the foreclosure, they have made payments of $9,600, but Defendant have refused to accept any additional payments from Plaintiffs. SAC ¶ 30.

On March 9, 2009, Plaintiffs' property was sold to Defendant at a foreclosure sale. RJN re: Mot. to Dismiss First Am. Compl. Ex. 6.

**Request for Judicial Notice**

On a motion to dismiss, a court normally may not look to matters beyond the complaint without converting the motion into one for summary judgment. See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991). There are two exceptions to this rule: (1) a court may take judicial notice of material which is either submitted as part of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Here, Defendant requests judicial notice of an unsigned June 2008 forbearance agreement that is referenced in the second amended complaint. Plaintiffs do not question the authenticity of Defendant's submission. To the extent that the Court relies on this document, it is appropriate for judicial notice. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (stating that the incorporation by reference doctrine permits the court to consider documents central to the allegations in the complaint and whose authenticity no party questions, but which are not attached to the complaint).

4

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

**1. Defendant's Motion to Dismiss Plaintiffs' equitable claims seeking to set aside the foreclosure sale is granted.**

As stated in the Court's March 23, 2010 Order, "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971); see also Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). California district courts apply the tender rule in examining wrongful foreclosure claims. Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to

tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999); see also Benham v. Aurora Loan Servs., C-09-2059 SC (N.D. Cal. Oct. 1, 2009) (granting a motion to dismiss a wrongful foreclosure claim because the plaintiff failed to allege a credible tender offer).

"The rules which govern tenders are strict and are strictly applied." Nguyen v. Calhoun, 105 Cal.App.4th 428, 439 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." Gaffney v. Downey Savings & Loan Assn., 200 Cal.App.3d 1154, 1165 (1988) ("An offer of partial payment is of no effect.") (internal quotation marks omitted). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." Gaffney, 200 Cal.App.3d at 1165.

Plaintiffs have made additional allegations of tender in their Second Amended Complaint, but those allegations are insufficient to survive a motion to dismiss. Plaintiffs concede that they must tender payment of the balloon amount, and they allege that they offered to make the balloon payment of $11,592.42, but were told not to. SAC ¶¶ 17, 18, 32, 76. They allege that they left checks with their pastor, one in the amount of $11,592.42, and another blank signed one. SAC ¶ 19. However, the operative forbearance agreement, signed in August 2008, states that the balloon payment is $28,909.25. RJN re: Mot. to Dismiss First Am. Compl. at Ex. 3-40. (Even the earlier

6

June 2008 forbearance agreement, which was unsigned and therefore inoperative and superseded by the August 2008 agreement, stated that the balloon payment due was $21,256.46. RJN re: Mot. to Dismiss Second Am. Compl.). There are no allegations that Plaintiffs made a tender offer of the entire balloon payment amount due under the August 2008 forbearance agreement. Nor are there any allegations that Plaintiffs' pastor contacted Defendant to submit the checks that Plaintiffs left, or that the pastor could have written checks in the full amount of the debt.

Even if Plaintiffs were able to allege tender of the full amount of the balloon payment from the August 2008 agreement, a partial payment does not constitute a tender offer. As the Arnolds court stated:

> It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security.

Arnolds, 158 Cal.App.3d at 579. Further, "[n]othing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." Gaffney, 200 Cal.App.3d at 1165 (quoting Rauer's Law etc. Co. v. S. Proctor Co., 40 Cal.App.524, 525 (1919)). Because Plaintiffs have not alleged tender of the entire debt, Plaintiffs have still not met the tender offer requirement.

Other arguments by Plaintiffs in opposition to Defendant's motion to dismiss are not well-taken. First, Plaintiffs allege that Defendant waived the right to the balloon payment by offering a more permanent workout option. SAC ¶ 32. However, they cite no authority to support their waiver argument. Moreover, as stated in the Court's March 23, 2010 Order, the October 2008 letter did not contain any promises to enter into a new workout agreement:

> Further, the congratulatory letter only provided Plaintiffs the opportunity to enter into a more permanent payment arrangement provided they submitted additional financial information; Defendant did not promise that it would actually enter into a new payment agreement. Because the forbearance agreement did not contain a promise not to foreclose, Plaintiffs have failed to pled a claim for breach of that agreement.

Mar. 23, 2010 Order at 6.

Second, Plaintiff argues that whether the tender offer is credible, valid and viable is a question of fact and should not be decided on a motion to dismiss. However, the only question that the Court addresses in this Order is whether a tender offer has been alleged, not whether the tender

offer is credible.

Third, Plaintiffs make equitable arguments that the tender offer should be found sufficient. Specifically, Plaintiffs argue that they have tried to make payments, but were refused, that they are fighting to save their home, that Defendants are in the business of lending money not owning homes, and that Plaintiffs want to remain in their home and make timely mortgage payments. However, Plaintiffs have cited no cases in which these equitable considerations have excused the failure to allege a tender offer.

Fourth, Plaintiffs argue that because they are not in substantial default of the loan and because Defendant sent the congratulatory letter, equity should excuse any failure to make a tender offer. See Karlsen, 15 Cal.App.3d at 117-18 ("'In giving determinative force to the application of the principle of equity-jurisprudence just enunciated, the court has taken requisite cognizance of the fact that it appears without any conflict that the plaintiff was both at the time of the exercise of the power of foreclosure and is now in substantial default in the performance of the obligation of her contract and that she has in no manner shown by the evidence any ability to presently relieve herself from such defaults.'") (quoting Leonard v. Bank of America, 16 Cal.App.2d 341, 344 (1936)) (internal citation omitted). In Karlsen, the plaintiff made a qualified and conditional substitute tender offer "to do equity," but the court found that "nowhere in the so-called offer to do equity does Karlsen agree to buy," so there was no valid tender offer. Karlsen, 15 Cal.App.3d at 119. Similarly, here, there has been no allegation that Plaintiffs offered to pay the entire debt.

As the Court has already provided Plaintiffs with an opportunity to sufficiently allege a tender offer, Defendant's Motion to Dismiss is granted without leave to amend as to Plaintiffs' claims seeking rescission to set aside the foreclosure sale: the first claim for breach of the forbearance agreement, the second claim to quiet title, the fourth claim for declaratory relief and the sixth claim for equitable estoppel. See Aguilar v. Bocci, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid. He is entitled to remain in possession, but cannot clear his title without satisfying his debt."); Karlson, 15 Cal.App.3d at 117 ("'. . . It is apparent from the general tenor of the decisions that an action to set aside the sale, unaccompanied by an offer to redeem, would *not* state a

cause of action which a court of equity would recognize.'") (quoting Leonard v. Bank of America, 16 Cal.App.2d 341, 344 (1936)).

**2.     Defendant's motion to dismiss relating to the propriety of the foreclosure process is granted.**

A nonjudicial foreclosure sale is accompanied by a common law presumption that it "was conducted regularly and fairly." Melendrez v. D & I Inv., 127 Cal.App.4th 1238, 1258 (2005) (quoting Brown v. Busch, 152 Cal.App.2d 200, 204 (1957)). This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. Id. (citing 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal.App.4th 1279, 1284 (2001)). The "mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" Id. It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity. Id. (citing Hatch v. Collins, 225 Cal.App.3d 1104, 1113 (1990)); see also 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal.App.4th 11279, 1284 (2001) ("Accordingly, '[a] successful challenge to the sale requires evidence of a failure to comply with the procedural requirements for the foreclosure sale that caused prejudice to the person attacking the sale.' Whether there is sufficient evidence to overcome this presumption is generally a question of fact.") (internal citations omitted). Further, if a trustee's deed contains a recital that all default and sale notices have been given, the notice requirements are statutorily presumed to have been satisfied, which presumption is conclusive as to a bona fide purchaser. See Cal. Civ. Code § 2924(c) ("A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.").

Plaintiffs argue that Defendant failed to provide them with the requisite notices under the Civil Code. Specifically, Plaintiffs allege that they did not receive any Notice of Sale for their property. SAC ¶ 37. Plaintiffs allege that Defendant failed to deliver a Notice of Default personally

9

to Plaintiffs within ten business days. SAC ¶ 46. Plaintiffs allege that Defendant failed to mail a copy of the Notice of Default to the county recorder and to Plaintiffs within fifteen days after recordation. SAC ¶¶ 38, 39, 40, 41. Plaintiffs allege that Defendant failed to inform them that the foreclosure process had begun and failed to give them notice of the time and place scheduled for the sale of their property. SAC ¶¶ 42, 43, 45. Plaintiffs allege that Defendant improperly sold the home less than twenty days after the date of the notice. SAC ¶ 44. Here, however, even if Plaintiffs did not receive the proper notices, Plaintiffs have not alleged a tender offer for the balance due, so any failure to receive notice was not prejudicial, and therefore does not rebut the presumption of the valid sale.

Further, Plaintiffs' allegations of lack of notice are belied by the contents of the judicially noticed documents in this case. First, on May 13, 2008, Defendant recorded a Notice of Default and Election of Sale against Plaintiffs' property. See RJN re: Mot to Dismiss First Am. Compl. Ex. 2. On August 15, 2008, a Notice of Trustee's Sale relating to Plaintiffs' property was recorded. Id. Ex. 5. On March 9, 2009, a Trustee's Deed Upon Sale was recorded stating that the foreclosure sale had taken place on February 27, 2009, which contained the statutory language required by California Civil Code Section 2924(c). Id. Ex. 6. Second, Plaintiffs agreed that if they defaulted under the August 2008 agreement, Defendant could terminate the agreement without further notice to Plaintiffs, and that in that case:

> all amounts that are then owing under the Note, the Security Instrument and this Agreement shall become immediately due and payable, and [Defendant] shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, *including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to [Plaintiffs].*

Id. at 3-37 (emphasis added). Accordingly, Plaintiffs' allegations of lack of notice fail to meet the plausibility standard from Iqbal. The judicially noticed documents demonstrate notice to Plaintiffs, so amendment of the complaint on this issue would be futile. Therefore, Defendant's motion to dismiss based on the notice requirements is granted without leave to amend.

Plaintiffs alternatively argue that the forbearance agreement was modified by Defendant's conduct, but they do not indicate what modifications were made. See Cal. Civ. Code § 1698 (permitting oral modification of written contract); Garrison v. Edward Brown & Sons, 25 Cal.2d

10

473, 479 (1944) (" Before a contract modifying a written contract can be implied, the conduct of the parties according to the findings of the trial court must be inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify the written contract."). To the extent that Plaintiffs mean that Defendant's October 7, 2008 congratulatory letter modified the August 2008 agreement so that Plaintiffs did not have to make the balloon payment, the Court has already found that the October 7, 2008 letter is not a contract. In addition, the August 2008 signed agreement states that the agreement can only be modified in writing, not by oral communications. See RJN re: Mot. to Dismiss First Am. Compl. Ex. 3-38. Accordingly, Plaintiffs' modification argument fails.

**3.    Defendant's motion to dismiss Plaintiff's claim for violation of California Business & Professions Code Section 17200 is granted.**

In the Second Amended Complaint, Plaintiffs allege that Defendant's statements constitute unfair trade practices that deceived Plaintiffs. SAC ¶ 91. Specifically, Plaintiffs allege that Defendant engaged in the following unlawful, unfair or fraudulent business practices: (1) assessing improper or excessive late fees under the Real Estate Settlement Practices Act ("RESPA"),12 U.S.C. § 2601, et seq.; (2) sending out a congratulatory letter giving Plaintiffs the impression that they were in compliance with the forbearance agreement and had rehabilitated their mortgage; and (3) attempting to collect a debt that was more than Plaintiffs owe. SAC ¶ 93. Plaintiffs argue that they have been harmed by this conduct that was likely to mislead them under threat of losing their home, in the form of unwarranted late fees, insurance premiums, and improper fees and charges. SAC ¶¶ 94, 96.

Sections 17200, et seq., prohibits "any unlawful, unfair or fraudulent business act or practice. This cause of action is derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." Lomboy v. SCME Mortgage Brokers, 2009 WL 1457738, at *7 (N.D. Cal. May 26, 2009). Further, when charging fraud against a business entity, the pleading requirements are more strict:

> The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or

11

1  wrote, and when it was said or written.

2  Tarmann v. State Farm Mutual Auro Ins. Co., 2 Cal.App.4th 153, 157 (1991). Here, Plaintiffs'

3  claim brought under Section 17200 is not sufficiently particular to satisfy the pleading standards.

4  Specifically, Plaintiffs allege that Defendant assessed improper late fees under RESPA, but

5  fail to allege any particular facts to support that claim. Further, as Defendant argued at the hearing,

6  the amount of accrued late fees was the same in both the inoperative June 2008 agreement and the

7  operative August 2008 agreement, which indicates that there was no violation of the sixty-day grace

8  period contained in RESPA. See 12 U.S.C. § 2605(d) ("During the 60-day period beginning on the

9  effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not

10  be imposed on the borrower with respect to any payment on such loan . . . .").

11  Plaintiffs also allege that the October 7, 2008 letter was a violation of Section 17200.

12  However, the Court has already ruled that the October 7, 2008 letter does not contain any promise of

13  a workout agreement. See March 23, 2010 Order at 6 ("Further, the congratulatory letter only

14  provided Plaintiffs the opportunity to enter into a more permanent payment arrangement provided

15  they submitted additional financial information; Defendant did not promise that it would actually

16  enter into a new payment agreement.").

17  Finally, Plaintiffs allege that Defendant violated Section 17200 by attempting to collect a

18  debt that is more than what Plaintiffs owed. Although the complaint lacks sufficient particularity

19  about this claim, Plaintiffs may be arguing that the payments due under the forbearance agreement

20  total more than the arrearage amount on the agreement. However, as described by Defendant at the

21  hearing, the total payments under the agreement are more than the arrearage because the payments

22  account for arrearages that continued to accrue while under the payment plan.

23  The Court has already given Plaintiffs an opportunity to amend this claim, and declines to

24  give them one more chance. Therefore, Defendant's Motion to Dismiss Plaintiffs' Section 17200

25  claim is granted without leave to amend.

26  **4. Defendant's motion to dismiss Plaintiffs' claim for promissory estoppel is granted.**

27  Plaintiffs allege that on October 15, 2008, Defendant made promises and representations to

28  Plaintiffs that it knew Plaintiffs would rely on to their detriment. SAC ¶ 109. Plaintiffs allege that

they accepted Defendant's offer in the October 7, 2008 letter of a new permanent workout plan and believed Defendant's statements that Plaintiffs did not need to send any money. SAC ¶ 110. Plaintiffs allege that they were told that Defendant was working on an accounting and that sending in any payments would complicate that process. SAC ¶ 111. Plaintiffs allege that they called Defendant several times to follow up and to tell Defendant that Plaintiffs were leaving the country. SAC ¶ 112. Plaintiffs allege that they called several times from Nigeria and were told that Defendant was working on a new payment plan. SAC ¶ 113. Plaintiffs concede that they owed a balloon payment, but allege that Defendant waived its entitlement to that payment by offering Plaintiffs a more permanent workout option. SAC ¶ 119.

To maintain a claim of promissory estoppel in California, a plaintiff must allege four elements: (1) a promise clear and unambiguous in its terms, (2) reliance by the party to whom the promise is made, (3) the reliance must be both reasonable and foreseeable, and (4) the party asserting estoppel must be injured by his reliance. Nahas v. City of Mountain View, 2005 WL 2739303, at *5 (N.D. Cal. Oct. 24, 2005) (citing Laks v. Coast Fed. Sav. & Loan Assn., 60 Cal.App.3d 885, 890 (1976)). However, where, as here, there is an express contract, promissory estoppel does not apply. Philips Medical Capital, LLC v. Medical Insights Diagnostics Center, Inc., 471 F.Supp.2d 1035 (N.D. Cal. 2007) ("In other words, when the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel.") (quoting Healy v. Brewster, 59 Cal.2d 455, 463 (1963)). The August 2008 forbearance agreement was an express contract between the parties. Accordingly, Defendant's motion to dismiss Plaintiff's promissory estoppel claim is granted. Because the existence of a contract bars application of promissory estoppel, the Court does not grant leave to amend.

**5.    Defendant's motion to dismiss Plaintiffs' accounting claim is granted**.

Plaintiffs allege that Defendant had a fiduciary duty to keep accurate records and to account for Plaintiffs' payments. SAC ¶ 129. An accounting is a "'species of disclosure, predicated upon the plaintiff's legal inability to determine how much money, if any, is due.'" Teselle v. McLoughlin, 173 Cal.App.4th 156, 180 (2009) (quoting 1A Corpus Juris Secundum, Accounting, § 6, pp. 7-8, fn.

13

omitted). "Thus, the purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device." Teselle, 173 Cal.App.4th at 180; see also Kritzer v. Lancaster, 96 Cal.App.1, 7 (1950) (stating that allegations that the defendant had an oral agreement to invest the plaintiff's money and then bought and sold speculative securities, resulting in harm to the plaintiff were sufficient to state a claim for an accounting); Whann v. Doell, 192 Cal. 680 (1923) (action for accounting of assets of partnership to which the plaintiff believed she was entitled).

Here, however, there are no allegations that any money is due to Plaintiffs as a result of their business relationship with Defendant. Instead, they seek an accounting of how much money they owe the true owners of the loan. Plaintiffs have cited no authority that a claim for accounting lies in that situation. Because a claim for accounting does not exist under the circumstances of this case, leave to amend would be futile. Therefore, Defendant's motion dismiss this claim is granted without leave to amend.

**6. Defendant's motion to dismiss Plaintiffs' claims for violation of state Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act is granted.**

Plaintiffs allege that Defendant's conduct violates the state Fair Debt Collection Practices Act, California Civil Code §1788. SAC ¶ 133. Plaintiffs allege that Defendant is a debt collector within the meaning of the statute. SAC ¶ 134. Plaintiffs allege that following violations of the state Act: (1) falsely representing that all fees are incurred and may be added to the debts; (2) falsely representing and collecting charges as attorneys' fees when no such attorneys' fees were actually incurred; (3) failing to provide required notices; and (4) trying to collect an amount larger than was owed by Plaintiffs. SAC ¶135.

Plaintiffs also allege that Defendant is a debt collector within the meaning of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692. SAC ¶ 142. Plaintiffs allege that Defendants violated the federal Act by: (1) sending demand letters that contained false, misleading and/or deceptive representations as to the amount of debt and the amounts incurred for attorneys' fees; (2) sending demand letters that failed to contain verification notices and/or other information required by the federal Act. SAC ¶ 143.

The Ninth Circuit has not addressed the question of whether mortgagees are debt collectors,

14

but the Fifth Circuit and district courts in the Ninth Circuit have held that foreclosure is not debt collection under the federal Fair Debt Collection Practices Act. See Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); Jozinovich v. JP Morgan Chase Bank, N.A., 2010 WL 234895, at * 6 (N.D. Cal. Jan. 14 2010) ("[T]he activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."); Diessner v. Mortgage Electronic Registration Systems, 618 F.Supp.2d 1184, 1188-89 (D. Ariz. 2009) ("While the Ninth Circuit has not specifically addressed the issues of whether mortgagees and their assignees are 'debt collectors' and whether non-judicial foreclosure actions constitute debt collection under the FDCPA, other courts have addressed the issues. The Fifth Circuit has held that mortgagees and their beneficiaries are not debt collectors subject to the FDCPA. The legislative history of the FDCPA also supports the position that mortgagees and their assignees, including mortgage servicing companies, are not debt collectors under the FDCPA when the debts were not in default when taken for servicing. . . . In addition, numerous district courts, including several in the Ninth Circuit, have also held that "the activity of foreclosing on [a] property pursuant to a deed of trust is not collection of a debt within the meaning of the FDCPA.'") (citing Hulse v. Ocwen Fed. Bank, 195 F.Supp.2d 1188, 1204 (D.Or. 2002); Gray v. Four Oaks Court Ass'n, 580 F. Supp.2d 883, 887 (D. Minn. 2008); Mansour, 2009 WL 1066155 at *2; Gallegos v. Recontrust Co., 2009 WL 215406, at *3 (S.D. Cal. Jan. 29, 2009); Castro v. Executive Trustee Services, LLC, 2009 WL 438683, at *6 (D.Ariz. Feb. 23, 2009);).

Further, under the corresponding state Fair Debt Collection Practices Act, a residential mortgage is not a debt. See Fuentes v. Deutsche Bank, 2009 WL 1971610, at *3 (S.D. Cal. July 8, 2009) (citing California law: "Since a residential mortgage is not a debt and a home foreclosure is not debt collection within the meaning of the statute, the court grants Defendant's motion for judgment with respect to this claim."); see also Jozinovich, 2010 WL 234895, at *6; Izenberg v. ETS Services, LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008) (holding that mortgage "foreclosure does not constitute debt collection under the RFDCPA."); Ines v. Countrywide Home Loans, 2008

15

WL 4791863 *1, *3 (S.D. Cal. Nov. 3, 2008) (while plaintiff contended that defendants failed to comply with plaintiff's lawful demands to validate the debt pursuant to RFDCPA, the court found that the complaint "[arouse] out of the allegedly unlawful foreclosure on [p]laintiff's property pursuant to a deed of trust, which does not fall within the meaning of the RFDCPA or the [F]FDCPA").

Although Plaintiffs point to a case from the Fourth Circuit holding that foreclosure can be debt collection (see Wilson v. Draper & Goldberg, 443 F.3d 373, 376-77 (4th Cir. 2006)), the weight of authority is to the contrary. Accordingly, Plaintiffs are unable to state a claim under the federal or state Fair Debt Collection Practices Act. Therefore, Defendant's motion to dismiss these claims is granted without leave to amend.

**7.    Defendant's motion to dismiss Plaintiffs' claim for violation of Real Estate Settlement Practices Act is granted.**

Plaintiffs allege that Defendant, a servicer of home mortgage loans, is governed by RESPA. SAC ¶ 138. Plaintiffs further allege that under 12 U.S.C. § 2605(d), and the implementing regulation, 24 C.F.R. § 3500.21(d)(5), Defendant cannot impose late fees or treat payments as late during the sixty-day grace period following the effective date of loan transfer if a consumer send a payment to his or her old servicer. SAC ¶ 138. Plaintiffs also allege that it is a violation to issue, or delay in issuing, dollar figures for reinstatement or pay-offs of the promissory notes, or to refuse to make appropriate corrections of the record after receipt of qualified written requests from borrowers. SAC ¶ 139. Plaintiffs also allege that it is a violation to neglect to properly notify the borrower in writing of the transfer of a loan for servicing. SAC ¶ 139.

As described above, Plaintiffs have failed to allege that improper late fees were assessed during RESPA's sixty-day grace period because the judicially noticed documents demonstrate that the assessed late fees are identical between the inoperative June 2008 agreement and the operative August 2008 agreement. Further, Plaintiffs allege that Defendant delayed in issuing dollar figures for reinstatement, however, the judicially noticed August 2008 agreement reflects payments required to bring Plaintiffs' payments current.

Plaintiffs allege that Defendant refused to make the appropriate corrections of the record after receiving written notice (12 U.S.C. § 2605(e)(2)), but there are no allegations that Plaintiffs

16

1 provided any written notice to Defendants about errors. Finally, Plaintiffs' allegation that Defendant
2 failed to inform Plaintiffs about the transfer of the loan for servicing (12 U.S.C. § 2605(c)) is not
3 supported by any specific allegations of that failure.

Given that judicially noticed documents contradict Plaintiffs' RESPA allegations, and the second amended complaint does not contain allegations to support Plaintiffs' other theories under RESPA, Defendants' motion to dismiss this claim is granted without leave to amend.

**8.  Defendant's motion to dismiss Plaintiffs' claim for breach of covenant of good faith and fair dealing is granted.**

Plaintiffs allege that pursuant to an implied covenant in the contracts, Defendant had a duty to refrain from acting in a way that would deprive Plaintiffs of the benefits of their contracts, and had a duty to do everything that the contracts presupposed each of the parties would do to accomplish the purpose or purposes of the contracts. SAC ¶ 145. Plaintiffs allege that Defendant breached those duties. SAC ¶ 146.

The covenant of good faith is an implied term arising out of a contract itself. Kim v. Regents of Univ. of Cal., 80 Cal.4th 160, 164 (2000). "The existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant." Id. "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." Carma Developers (California), Inc. v. Marathon Development California, Inc., 2 Cal.4th 342, 373 (1992) (stating that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract).

Here, the only contract actually entered into by the parties that is alleged in the complaint is the August 2008 forbearance agreement. Plaintiffs have not alleged any breach of the implied covenant of good faith and fair dealing based on that agreement, which gave Defendant the right to terminate the agreement and begin foreclosure proceedings without notice to Plaintiffs if Plaintiffs defaulted on their payments under the agreement.

Plaintiffs here failed to state a claim for breach of the covenant of good faith and fair dealing, and given the plain language of the August 2008 agreement regarding Defendant's ability to foreclose without further notice, leave to amend would be futile. Therefore, Defendant's Motion to Dismiss this claim is granted without leave to amend.

**Conclusion**

Defendant's Motion to Dismiss is granted without leave to amend.

**IT IS SO ORDERED.**

Dated: June 3, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge